The Law Offices Of

# JOSEPH A. BONDY

Joseph A. Bondy

Stephanie Schuman
(Of Counsel)

1776 Broadway
Suite 2000
New York NY 10019
Tel 212.219.3572
Fax 212.219.8456

JOSEPHBONDY@MAC.COM

December 16, 2019

Hon. J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
Courtroom 706
New York, NY 10007

Re: United States v. Lev Parnas, et. al., 19-cr-725 (JPO)

Dear Judge Oetken:

This letter-memorandum is submitted in further support of Defendant Lev Parnas' December 4, 2019 motion for modification of the terms of his pre-trial release, and in reply to the Prosecution's December 11, 2019 response opposing modification and seeking a remand pending trial.

Since the time of his original bail determination, Mr. Parnas has complied with every condition of his Pre-Trial Supervision[1] and has been endeavoring to comply with his Congressional Subpoena by submitting documents and evidence that are within his possession. The Government's arguments, to the extent "new" and not considered originally by the court and parties in setting bail, do not satisfy its burden of proving Mr. Parnas to be a "serious" risk of flight as required under the Bail Reform Act. To the contrary, he has powerful incentives to be present, and his simple application to allow for modest time outside of his house should be granted.

---

[1] The Pre-Trial Services Office in the Southern District of New York, although suggesting a tightening of certain conditions, acknowledges that Mr. Parnas has been compliant with the terms of his release and is *not* recommending remand.

I.       **Background and Relevant Chronology**

On October 9, 2019, Mr. Parnas was arrested, pursuant to a Southern District of New York warrant, as he and co-defendant Igor Fruman attempted to board an international flight at Washington Dulles International Airport with a one-way ticket to Frankfurt, Germany.  On October 10, 2019, the Indictment was unsealed, and Mr. Parnas made his initial appearance in the Eastern District of Virginia (Alexandria). See United States v. Parnas, 1:19-mj-00443-MSN-1 (EDVa) (Docket Entries 1, 3.) Mr. Parnas was initially granted a one-million dollar property bond with conditions that included strict home detention in the Southern District of Florida (SDFL) and GPS electronic monitoring. He was remanded until the conditions of his release had been satisfied.

On October 18, 2019, Mr. Parnas' new counsel, Edward B. MacMahon, Jr., negotiated an amendment of the terms of his release down to a two-hundred thousand dollar bond, still to include home detention and GPS monitoring. Mr. Parnas' wife, Svetlana Parnas, posted the bond by check that day, and Mr. Parnas was released from custody on October 21, 2019. (See EDVA Dkt. 10, 11.) A GPS monitoring device was placed on his ankle, and he returned to his home in Boca Raton, Florida. The matter was transferred to the Southern District of New York ("SDNY"), pursuant to Federal Rule of Criminal Procedure 40. (EDVA Dkt. 12.)

On October 22, 2019, Mr. Parnas traveled from Florida to the SDNY by plane, where he was arraigned before Your Honor the following day on charges that included conspiracy to violate the ban on foreign donations and contributions in connection with federal and state elections, in violation of 18 U.S.C. § 371 and 52 U.S.C. §§ 30121, 30122, and 30109, conspiracy to make contributions in connection with federal elections in the names of others, in violation of 18 U.S.C. § 371 and 52 U.S.C. §§ 30122 and 30109, and making false statements and falsifying records to obstruct the administration of a matter within the jurisdiction of the Federal Election Commission ("FEC"), in violation of 18 U.S.C. §§ 1001 and 1519. (Dkt. 1.) Represented by attorneys McMahon and the undersigned, Joseph A. Bondy, Mr. Parnas entered a plea of not guilty, met with counsel in the SDNY, and returned by plane from JFK International Airport to Florida without incident.

On October 28, 2019, Mr. Parnas, with the consent of his Pre-Trial Services Officer, Rick Samson, flew to New York to meet with counsel. On November 1, 2019, Mr. Parnas flew from JFK International Airport back home to Florida.

On November 2, 2019, Mr. Parnas' counsel informed the House Permanent Select Committee on Intelligence by letter that Parnas had relieved his prior counsel, John Dowd, and intended to comply with HPSCI's October 10, 2019 subpoena for documents and testimony.

On November 5, 2019, Mr. Parnas, with the consent of his Pre-Trial Services Officer, again flew to New York to meet with counsel. He remained in Manhattan, meeting with both of his attorneys while here. On November 6, 2019, Mr. Parnas' counsel informed the Government in writing that Parnas required all records seized from his person, home, and electronic devices,

to be able to comply with his HPSCI subpoena.[2]  On November 8, 2019, Mr. Parnas flew from JFK International Airport back home to Florida.

### Neither Parnas Nor Counsel Misled His Pre-Trial Services Officer

At Mr. Parnas' December 2, 2019 status conference with the Court, counsel requested a modification of the terms of his pre-trial release, to allow Mr. Parnas to leave his home for two hours daily to exercise and spend time outside with his wife and five children. The prosecution opposed this request in entirety, arguing that Mr. Parnas represented an extreme risk of flight. The Court asked defense counsel to seek the position of Mr. Parnas' Pre-Trial Services Officer on this request, and the matter was adjourned to February 3, 2020.

Immediately after the status conference, Mr. Parnas, in both counsels' presence, contacted his Pre-Trial Services Officer in Florida, Rick Samson, and informed him that the hearing had concluded, he would be returning home that evening, and that his attorneys would be contacting him to discuss the possibility of being allowed outside, per the Court's request.

On the evening of December 2, 2019, Mr. Parnas and his wife flew from JFK International Airport back to Florida, and returned to their home without incident.

On December 4, 2019, the undersigned communicated by telephone with Officer Samson. Counsel informed Officer Samson that the prosecution opposed Mr. Parnas' in-court request for modification of the terms of his release to allow him out for two hours daily, and the Court had asked counsel to inquire as to his Office's position. Officer Samson indicated that Mr. Parnas had been fully compliant with all of the terms of his pre-trial supervision, and that he did not oppose Parnas' being permitted to leave his home daily between 8:00am and 5:00pm. Officer Samson explained that Mr. Parnas was wearing a GPS tracking ankle monitor, which "pinged" every thirty-seconds, and that he was able to know when Mr. Parnas, if driving, stopped at a traffic light or made a turn, and could even determine the speed at which he was traveling. Officer Samson also informed that, were the monitor tampered with, he would receive immediate notification. Counsel suggested to Officer Samson, who agreed, that Mr. Parnas would stay away from airports, and boat and train terminals, given the SDNY prosecutors' remarks to the Court at the December 2, 2019 conference.

Subsequent to the call with USPTO Samson, defense counsel wrote and filed a letter-request for modification of the terms of release with Your Honor. Shortly thereafter, counsel e-mailed a copy of the letter-request to Officer Samson, who indicated in response, "Got it…"

The letter-request states in italics that:

---

[2] Mr. Parnas continues to produce materials within his custody and control, and anticipates producing the materials seized from him by the Government, to Congressional Investigators. He remains intent upon complying with his subpoena and assisting the Impeachment Inquiry to the fullest extent required.

> *"I have spoken with Mr. Parnas' United States Pre-Trial Services Officer in the Southern District of Florida, Rick Sampson, who does not oppose this request. The Government, as it expressed at our status conference this past Monday, opposes any modification of release."*

(See Dkt. 41–Letter Motion Requesting Modification of the Terms of Pre-Trial Release.)

On December 10, 2019, the Government contacted the undersigned, asking whether he had informed Officer Samson that the parties had agreed to allowing Mr. Parnas to leave his home. Counsel assured that he had not, as the parties had not so agreed, and forwarded prosecutors the e-mail and letter-motion sent to Officer Samson on December 4, 2019. Counsel then spoke with Officer Samson the following morning. To the extent he may have misunderstood, it is clear there was no intent to mislead.

On December 11, 2019, in response to Mr. Parnas' letter-motion, prosecutors requested reopening of the bail hearing and revocation of Mr. Parnas' bail, arguing principally that Parnas' allegedly misleading statements to Officer Samson and material misstatements regarding his financial status were new circumstances that demonstrated he was an extreme risk of flight.

## Parnas Did Not Make Materially False Statements as to His Finances

As part of their efforts to remand Mr. Parnas pending trial, the prosecutors have alleged that Mr. Parnas gave materially and intentionally false statements regarding his finances. A review of the facts reveals that this is not the case.

Mr. Parnas was first interviewed regarding his finances while jailed, without the benefit of any records or the ability to do more than estimate his assets and income derived from self-employment. He made statements to the best of his ability under those circumstances, and was not asked about his wife's accounts or assets.

Shortly thereafter, as a condition of Mr. Parnas' release, the Government required that Svetlana Parnas provide two months of her banking records.

The records produced to the Government plainly reflected $1,000,000 in wire transfers entering Mrs. Parnas' account in September 2019. The Government was thus aware of these funds having entered Mrs. Parnas' account—which funds were not Lev Parnas'—prior to agreeing to the terms of Mr. Parnas' bail, and no other questions were asked of her regarding these monies.[3]

_____

[3] The funds received represented a loan taken by Mrs. Parnas, for a term of sixty months, at a 5% annual rate of interest.

The records also reflected a $200,000 payment from Svetlana Parnas' account into an escrow account as downpayment[4] on a home, and payments for private jet travel and other personal expenses. These facts, too, were known to the Government before the original bail was set by the Court.

Next, when Mr. Parnas' financial statement—of his <u>own</u> assets—was e-mailed to the Government on October 30, 2019, counsel explicitly informed that Mr. Parnas required additional information that was in the Government's possession, and from his accountant, to complete the statement accurately on questions that included his business, self-employment income, judgments and matters pending. He was also not requested to include any information pertaining his spouse's income, accounts, or assets.

At no time did Mr. Parnas make a knowingly false statement, and the Government neither objected to nor responded with a single question regarding Mr. Parnas' financial statement before filing their request to revoke bail.

## II.     <u>Application of Law to Facts</u>

### The Relevant Law

Generally, a court must release a defendant on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community. <u>See</u> 18 U.S.C. § 3142(c)(1)(B). The legal issue before the Court is whether the Government has carried its burden of demonstrating that no condition or combination of conditions can be set that will reasonably assure Mr. Parnas' appearance and protect the community from danger. 18 U.S.C. § 3142(e).

The Government can move for detention under either § 3142(f)(1) or § 3142(f)(2) of the Bail Reform Act. Under subsection (f)(1), it may seek a detention hearing in cases where the defendant has been charged in a case involving certain crimes, including: (1) a crime of violence, which carries a maximum term of ten years or more; (2) an offense which carries a maximum sentence of life imprisonment or death; (3) serious drug offenses; (4) felonies committed by certain repeat offenders; and (5) felonies that are not otherwise crimes of violence that involve a minor victim or the possession or use of a firearm, destructive device, or any other dangerous weapon. 18 U.S.C. § 3142(f)(1). None of these enumerated bases apply to Mr. Parnas.

The Government can also seek detention under § 3142(f)(2) in a case that involves either "A) a serious risk that the defendant will flee; or B) a serious risk that [the defendant] will obstruct or attempt to obstruct justice…" 18 U.S.C. § 3142(f)(2).

The Bail Reform Act further provides that "[t]he [bail] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that <u>information exists that was not known to the movant at the time of the hearing</u> and that has

---

[4] These funds, termed a "hard deposit" by the Seller, remain in escrow, unavailable absent settlement or Court order.

a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." (Emphasis supplied) 18 U.S.C. § 3142(f)(2).

Under 18 U.S.C. § 3148(b), a court "shall enter an order of revocation and detention if, after a hearing, the judicial officer" (1) finds that there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release" or "clear and convincing evidence that the person has violated any other condition of release"; *and* (2) finds that "there is no condition or combination of conditions of release that will ensure that the person will not flee" or "the person is unlikely to abide by any condition or combination of conditions of release."  Even if the Court determines that there is probable cause that a person committed a crime on release, a "rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or to the community."  Id.

To support detention based on risk of flight the Government must provide proof by a preponderance of the evidence. United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987) (citing United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985); United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986)). In making this determination, the Court must consider a set of four factors established by Congress. See 18 U.S.C. § 3142(g). These include "'the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community.'" Khashoggi, 717 F. Supp. at 1049 (quoting Chimurenga, 760 F.2d at 403). In most cases, release is the norm. See 18 U.S.C. §§ 3142 (b) and (c). "The court should also 'bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial.'"Khashoggi, 717 F. Supp. at 1049 (quoting Shakur, 817 F.2d at 195).

The Government argues that Mr. Parnas' statements to the Pre-Trial Services Office regarding his finances and his counsel's efforts to pursue a reasonable curfew rather than strict home-confinement demonstrate changed circumstances that are material to the question of risk of flight. They do not. Mr. Parnas has not committed any other crimes nor violated the terms of his release.

### The New Information Provided by the Government Does Not Demonstrate the Parnas Has Become a Serious Risk of Flight

The record reflects that conditions were already put in place to address concerns regarding risk of flight and, until the Government filed its motion for revocation, the Parties had agreed that the measures in place were adequate. The Government did not seek detention of Mr. Parnas at his presentment; rather, bail conditions were set, then modified downward, and Mr. Parnas was released. Both the Government and the Court agreed that adequate and reasonable measures were in place to secure Mr. Parnas' return to court. Now, however, the Government contends, circumstances have changed and that detention is warranted.

To support its contention that Mr. Parnas presents an extreme risk of flight, the Government cites several factors: (1) the scope and nature of the alleged Election Act crimes; (2)

the probability that the advisory Sentencing Guidelines in the event of a conviction will be above five years; (3) that Mr. Parnas allegedly has access to funds from abroad; (4) that he frequently traveled internationally; (5) that he could possibly flee to Ukraine; (6) that he may be facing additional charges; (7) that Mr. Parnas allegedly made a misleading statement to his Pre-Trial Services Officer regarding a curfew; and (8) finally, that Mr. Parnas allegedly made false financial claims to the Pre-Trial Services Office and in a financial affidavit. (Gov. Mem. at 5-9.) Although the Court certainly may consider "changed" circumstances under 18 U.S.C. § 3142(f)(2), the first five if not six of these factors are not new, and were considered by the Government and Court in arriving at Mr. Parnas' current bail conditions. Mr. Parnas also cannot flee to Ukraine, where he has been the subject of threats since even prior to his arrest. There is also no evidence that Mr. Parnas or his wife have received any funds from abroad since the time of his arrest, or that either continues to have access to other funding sources, including those cited in the Government's revocation motion. In fact, the Parnas' financial position has diminished significantly since October 2019.

The Government also fails to explain how Mr. Parnas' alleged statements change the calculus with respect to the question of risk of flight. It points to the receipt of funds by Svetlana Parnas in September 2019, records which were provided to the Government as a pre-condition to the initial bail setting. This fact has no probative value regarding the issues before the Court. Furthermore, Mr. Parnas' statements regarding <u>his</u> assets were made to the best of his abilities, with his financial statement being based upon approximations, given the Government's seizure of his records, and his counsel having plainly informed the Government that Mr. Parnas would require return of these records and consultation with his accountant to complete the statement. This fact, too, was known by the Government as of October 30, 2019, and did not trigger a request for revocation until Mr. Parnas asked for time outside.

The Government arrived at the original bail agreement knowing the scope of the charges, the possible Sentencing Guidelines, that Mr. Parnas had a record of frequent international travel, including by private jet, that his wife had received $1,000,000 into her account in September 2019, and that he was potentially facing additional criminal charges. It also knew upon submission that Mr. Parnas had asserted he was unable to complete his financial statement without access to certain banking and employment records. Accordingly, it is respectfully submitted that the Government has failed to carry its burden of showing by a preponderance of the evidence that Mr. Parnas has done anything to have become a "serious" risk of flight as required by § 3142(f)(2)(A) of the Bail Reform Act.

### Release With Curfew is Appropriate

The Government's new arguments do not show that Mr. Parnas has become a serious risk of flight requiring detention. He should be permitted to be outside of his home, away from transportation hubs, as originally not opposed by his Pre-Trial Services Officer. Since the time of his release on October 22, 2019, Mr. Parnas has scrupulously complied with every term of his supervision. He has travelled to and from every court appearance, met with his counsel in New York on several occasions, passed through a number of international airports, and vocally expressed his interest in speaking truth to Congress. Mr. Parnas has strong incentives to remain

with his family, to continue to be cooperative with Congress, and to be actively involved in the defense of the instant case.

**Conclusion**

Mr. Parnas is not a serious risk of flight and his current conditions of release are sufficient. He should be permitted to leave his home for limited periods daily, as originally recommended by his Pre-Trial Services Officer.

Respectfully submitted,

_____/S/_____
Joseph A. Bondy
*Co-counsel to Lev Parnas*

c:      All Counsel
       USPTO Samson
       USPTO Joshua Rothman