# The Law Offices Of

# Joseph A. Bondy

Joseph A. Bondy

Stephanie R. Schuman
(Of Counsel)

1776 Broadway
Suite 2000
New York NY 10019
Tel 212.219.3572
Fax 212.219.8456
JOSEPHBONDY@MAC.COM

November 27, 2020

**BY EMAIL**
Rebekah Donaleski, Esq.
Nicolas Roos, Esq.
Douglas Zolkin, Esq.
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Re: *(S-1) United States v. Parnas, et al., 19 Cr. 725 (JPO)*

Dear Counsel:

We write on behalf of all defendants, to request certain specific information regarding the grand juries that returned the original and superseding indictments.

### Quorum

In *United States v. Reyes*, 921 F.Supp. 189 (S.D.N.Y. 1996), the court ordered the government to produce grand jury attendance and voting records, where the defendant produced documents obtained from the Jury Administrator proving that ten members of the grand jury that returned a third superseding indictment were in fact not members of the grand jury when it voted for the original, first and second superseding indictments. Finding a valid question of potential government misconduct in failing to present all evidence upon which its earlier indictments were based, the court ordered the government to produce all grand jury attendance and voting records.

We request production of the following items:

1. Confirmation that there was continuity in the grand jurors between the initial and second presentments.

Page 1 of 6

2.      Confirmation that at least 12 of the jurors who were present on September 18, 2020 (the date the first superseding indictment was returned) were also members of the grand jury on or before October 9, 2019 (the day the original indictment was returned)?

3.      If there were grand jurors who were present for the return of the first superseding indictment but not the original indictment, please explain what steps the Government took to present these jurors with all testimony and evidence upon which the previous indictment was based.

4.      Specifically, confirm whether the grand jury testimony upon which the first indictment had been returned was read to these jurors, or instead, the Government simply read the prior indictment. Confirm whether or not all of the evidence supporting the original charges made available to the new jurors.

5.      If any arguably attorney-client privileged communications were presented to the grand jury that returned the superseding indictment. If so, please provide the basis for the Government's assertion that this information is not privileged.

## **Grand Jury Presentment**

In the superseding indictment, the Government "streamlined" Count One to exclude the allegation of Messrs. Parnas and Fruman participating in a plot with unnamed corrupt former Ukrainian Government officials to persuade U.S. Government officials to remove then-American Ambassador to Ukraine Marie Yovanovich.

On February 10, 2020, United States Attorney General William P. Barr made several public statements regarding the "providence" and "credibility" problems presented by "information coming in about Ukraine," none of which could be received "at face value."[1] These included:

- "The DOJ has the obligation to have an open door to anybody who wishes to provide us information that they think is relevant, but as I did say to Senator Graham, *we have to be very careful with respect to any information coming from the Ukraine.*"[2]

---

[1] *See* ABC News Politics (@ABCPolitics), TWITTER (Feb. 10, 2020, 12:29pm), https://twitter.com/ABCPolitics/status/1226921058051219464?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1226921058051219464%7Ctwgr%5E%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fabcnews.go.com%2FPolitics%2Fag-barr-doj-review-giuliani-documents-info-ukraine%2Fstory%3Fid%3D68884719.

[2] *Id.*

- "There are a lot of agendas in the Ukraine, there are a lot of cross-currents and we *can't take anything we receive from the Ukraine at face value*"[3]

- "And for that reason we had established an intake process in the field so that any *information coming in about Ukraine could be carefully scrutinized by the department and its intelligence community partners so that we could assess its providence and its credibility.*"[4]

(emphases added.)

Presenting any such information from Ukraine to a grand jury "at face value," before being "carefully scrutinized by the department and its intelligence community partners so that [they] could assess its providence and its credibility," and without a fair accounting of its trustworthiness, would be fundamentally unfair to Mr. Parnas—just as it is unfair to obtain an indictment based upon false evidence, *United States v. Ciambrone*, 601 F.2d 616, 622-23 (2d Cir. 1979), so too is it unfair to mislead a grand jury into thinking it is receiving credible evidence from reliable sources.

Prosecutors owe a duty of good faith to the court, grand jury, and defendants to screen out unreliable grand jury witnesses, and Justice Department policy requires prosecutors to disclose "substantial evidence that directly negates the guilt of a subject of the investigation" to the grand jury before seeking an indictment. *See* JM 9-11.233.

We request production of the following items:

1.      Identify whether any information or testimony of the kind described by Attorney General Barr was presented to the grand jury that returned the original indictment.

2.      If any such information or testimony was originally presented, please identify whether any of this evidence was withdrawn or not presented during the subsequent presentment the led to the first superseding indictment.

3.      If any such information or testimony was originally presented, then subsequently withdrawn or not presented, please identify whether grand jurors received any instructions or warnings related to the potential credibility problems posed by this evidence—including credibility problems related to any agents responsible for the gathering of this evidence.

4.      If any such information or testimony was originally presented, then subsequently withdrawn or not presented, please identify and produce it in entirety, forthwith.

5.      If any such information or testimony was originally presented, then subsequently withdrawn or not presented, please confirm whether any of this information was relied upon in obtaining any of the search warrants in this case and, if so, which ones.

---

[3] *Id.*

[4] *See id.*

6.      If any such information or testimony was presented in seeking the first indictment but later withdrawn or not presented, how many grand jurors who heard the presentment of this evidence in the original were present at the time of the return of the superseding indictment.

### Fair Cross Section

The Defendants intend to challenge, *inter alia*, the composition of the grand jury in this case, and therefore ask for production of records and papers used in connection with the constitution of the Master and Qualified Jury Wheels in the United States District Court for the Southern District of New York, pursuant to the Fifth and Sixth Amendments to the United States Constitution and the Jury Selection and Service Act ("JSSA"), 28 U.S.C. §§ 1867(a) and (f). As you know, Section 1867(f) of Title 28 of the United States Code states that "the parties shall… be allowed to inspect, reproduce, and copy… records or papers [used by the commission or clerk in connection with the jury selection process] at all reasonable times during the preparation and pendency of… a motion under subsection (a)." *See also Test v. United States*, 420 U.S. 28, 30 (1975) (right to inspect records is supported "not only by the plain text of the statute, but also by the statute's overall purpose in insuring grand and petit juries selected at random from a fair cross section on the community"), quoting 28 U.S.C. § 1861(d)). To the extent that the USAO SDNY is already in possession of these materials, and to expedite this process and conserve judicial resources, we request voluntary production of these materials. The requested materials are necessary to properly challenge the jury selection procedures used in this district.

To invoke the right to inspect under 28 U.S.C. § 1867(f) and "[t]o avail himself of [the] right of access to otherwise unpublic jury selection records, a litigant needs only allege that he [or she] is preparing a motion challenging the jury selection procedures." *United States v. Alden*, 776 F.2d 771, 773 (8th Cir. 1985) (internal citations omitted). The Defendants are not required to make any showing with respect to probabilities of success of such a motion. *See, e.g., United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996); *see also United States v. Gotti*, 2004 WL 2274712, at *5 (S.D.N.Y. Oct. 7, 2004) (granting motion for discovery even absent any showing that information would reveal a violation).

Accordingly, we ask that you provide the following information. If an item is not known, please indicate this fact. If an item is not in your possession, please indicate whether you consent to its production being Ordered by the Court:

1.      Please indicate which jury division was chosen for the grand jury in this case.

2.      Please provide the specific location where the grand jury sat.

3.      Confirm whether or not any aspect of the grand jury presentment was conducted remotely, and, if so, whether grand jurors ever appeared remotely.

4.      A description of any changes from the previous procedures or from the Jury Plan for the grand jury or creation of the grand jury because of the Covid-19 pandemic.

5.      Any order of the Court that affects the previous procedures or the Jury Plan for the grand jury or creation of the grand jury because of the Covid-19 pandemic.

6.      To the extent known, describe work done, contact information, and communications with any vendors in the creation of the Master and Qualified Jury Wheels used to summon grand jurors in this case.

7.      The Jury Plan for the Southern District of New York currently in effect and, if different in any respect, at the time grand jurors were summoned in this case.

8.      A description of the reason(s) for the choice of jury division for the grand jury in this case.

9.      Any "AO-12 form" or "JS-12 form" created which relates to the District and Divisional Master Jury Wheels and Qualified Jury Wheels that were used to summon the grand jurors who returned the indictment in this case as required by 28 U.S.C. § 1863(a).

10.     Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheels and Qualified Jury Wheels that were used to summon grand jurors in this case with the Jury Plan, Jury Selection and Service Act and constitutional requirements.

11.     The date when the Master Jury Wheel that was used to summon grand jurors in this case was refilled as described in the Jury Plan Section III B.

12.     The record of the steps, numbers, and calculations as described in the Jury Plan Section II A.

13.     The general notice explaining the process by which names are periodically and randomly drawn as described in the Jury Plan Section III D.

14.     The calculation of the division of jurors from Westchester, Putnam, and Rockland Counties to reasonably reflect the relative number of registered voter s as described in the Jury Plan Section IV B.

15.     The procedures implemented related to prospective jurors who do not respond to a juror qualification form or have their juror qualification form returned from the Postal Service as undeliverable as described in the Jury Plan Section III E.

16.     The date when grand jurors were summoned in this case.

17.     The number of persons summoned from the Qualified Jury Wheel to be considered as grand jurors in this case.

18.     The District, Manhattan Division, and White Plains Division Master Jury Wheel data as described in the Jury Plan Sections III A, III B and III C in electronic and accessible form

that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

19.     The District, Manhattan Division, and White Plains Division Qualified Jury Wheel data as described in the Jury Plan Section III D in electronic and accessible form that includes Juror Number , Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

20.     Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond or were disqualified or exempted from jury service as described in the Jury Plan. The data should be in electronic and accessible form that includes Juror Number, whether the form was returned Undeliverable , whether the form was not returned, Reason for Disqualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.

21.     The Juror Number only (and not Name or Address) for persons selected as potential grand jurors in this case.

22.     The source of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in the Jury Plan Sections I (4) and III A (voter registration list). The data should include, as available, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division but not any personal information or information that could be used to identify any individual such as Name or Address.

23.     The juror qualification and summons forms for persons summoned to potentially become grand jurors in this case.

24.     The disposition of each summoned potential grand juror in this case as to excusal, deferment, disqualification or selection as described in the Jury Plan.

Thank you in advance for your anticipated response.

Sincerely,

____/S/_____
Joseph A. Bondy
Stephanie R. Schuman

c:     All counsel