The Law Offices Of

# Joseph A. Bondy

Joseph A. Bondy

Stephanie R. Schuman
(Of Counsel)

1776 Broadway
Suite 2000
New York NY 10019
Tel 212.219.3572

josephbondy@mac.com

May 28, 2021

(By E-Mail)
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, N.Y. 10007

  Re: United States v. Parnas, et. al., 19-cr-725 (JPO)

Dear Judge Oetken:

  We submit this letter-reply in further support of our request for a status conference on the discovery issues created by the recent seizures and pending searches of multiple electronic devices belonging to Rudolph Giuliani, Giuliani Partners LLP, and Victoria Toensing, and the now-revealed multiple searches of a number of individuals' electronic devices and iCloud accounts.

  As to the recent round of 18 electronic devices seized from Giuliani, Giuliani Partners LLP, and Toensing, we believe that the Special Master recently Ordered by the Court should also be required to identify potential Rule 16 evidence, *Brady*/*Giglio* evidence, and evidence of "discriminatory intent" that supports the Defendants' selective prosecution argument. We also believe the Government's view of exactly what falls within the scope of production required under either Rule 16, *Brady* and its progeny, or the caselaw ordering discovery in a selective prosecution claim, is inappropriately narrow.

  For one thing, the standard for requiring production under Rule 16, *Brady*, or in resolution of a pre-trial motion, is not whether the Government will use the seized materials at trial. Furthermore, as to the materials the Government has seized but is yet to review, and which it concedes may contain either Rule 16 or *Brady* materials that are subject to disclosure, the Defendants wish to resolve with the Court and Government the means through which the Government intends to comply with its statutory and Constitutional disclosure obligations sufficiently in advance of trial for the defendants to make meaningful use of any such materials.

Potential means to assure compliance may include the Defendants being able to have input and participate in providing suggested search terms for the Special Master, and any filter teams that may possess other previously seized materials not yet seen by the trial prosecutors in this case.

It is also plainly disingenuous for the Government to assert that it has yet to identify Rule 16 or *Brady* evidence contained on recently seized devices that it has yet to review.

The Government's disclosure obligations under Rule 16 clearly extend to any recorded videos, voice messages, audio messages, or other statements or recordings of the Defendants that are contained in the records possessed by the Government in response to all of the recently conducted and recently disclosed searches and seizures. Furthermore, the Government must disclose all evidence within its control if it is "material to preparing the defense." Fed. R. Crim. P. 16 (a)(1)(E).

Also, contrary to the Government's assertion, the Rule 16 and *Brady* evidence sought from the Giuliani and Toensing devices and accounts, as well as the ▓▓▓▓▓▓▓▓▓▓ accounts, are potentially relevant to the counts charged and the Government's trial evidence in several key respects. These include, but are not limited to, Giuliani's relationship and communications with the Government's "Victim 7" in the "Fraud Guarantee" activities charged in Count Seven[1], his close relationship to his former law firm and the lawyer representing Parnas and Fruman on the civil FEC claims that form the basis for Counts Two and Three, and discussions about Parnas and Fruman between Giuliani and other potential Government trial witnesses for whom discovery materials have been produced and in many instances proffers presumably held, including but not limited to, the former U.S. Congressman from Texas, Pete Sessions, former co-chair of the Republican National Committee, Tommy Hicks, Jr., Republican fundraiser and former managing partner of Giuliani Partners, Roy Bailey, and energy magnate and GOP donor Harry Sergeant, III.[2]

It is also noteworthy that the Government now attempts to thwart discovery of materials that it has been gathering since November 2019 by claiming it to be "unrelated to the crimes charged," even though the original indictment squarely involved an allegation that Parnas was engaged in efforts in Ukraine—now known to be at the behest of and on behalf of Mr. Giuliani and his client the former President, with support and aid from Toensing and others—to have the American Ambassador to Ukraine removed from her post, as part of an influence campaign on

---

[1] For example, it has been reported that Giuliani was overheard during an inadvertent call to a journalist, apparently discussing the strength of the Government's yet-to-be-charged Fraud Guarantee case, stating ""Charles would have a hard time with a fraud case 'cause he didn't do any due diligence." *See* "Who is Rudy Giuliani's friend "Charles"? An accidental text may have outed his identity," Salon, November 10, 2019, https://www.salon.com/2019/11/10/who-is-rudy-giulianis-friend-charles-an-accidental-text-may-have-outed-his-identity/ (last accessed May 28, 2021). We believe there are a number of undisclosed communications between the two men that led Giuliani to this belief, and which must be produced.

[2] At least one of which may also be a witness or have evidence relating to the charges comprising the charged Foreign Donor Scheme.

behalf of certain Ukrainian former officials. After using the grand jury as a discovery process for the purpose of burnishing its prior indictment, the Government "streamlined" this assertion out of Count One of the Superseding Indictment in its entirety—now, it appears, as a convenient means to attempt to prevent the materials that it had been collecting from Giuliani, Toensing and their cohorts from being discoverable by Parnas and his co-defendants.

Plainly, to the extent that Giuliani, Toensing or others discussed hiding or destroying records—or "getting rid of"—any evidence of any sort in response to Parnas and Fruman's Congressional Demand letter dated September 30, 2019, or their arrest on October 9, 2019, this evidence is potentially relevant to the Defendants' selective prosecution claims and proof of other individuals within DOJ or the White House participating in a plan to prematurely arrest and attempt to silence them.

The Government argues that, since Parnas was not yet attempting to cooperate with Congress at the time he was arrested, his selective prosecution claim is without merit. However, by the time of Parnas and Fruman's arrest, Parnas had received a demand letter seeking evidence from the House Intelligence Committee, and been referred by Giuliani and Toensing to Attorney John Dowd—who had previously represented former President Trump. Attorney Dowd then secured a conflict waiver from Trump—who claimed not to know Parnas—by e-mail through the President's chief impeachment counsel, Jay Sekulow. Next, Dowd met with Parnas and took custody of materials that he believed were responsive to Parnas' demand letter. Then, Dowd informed the Intelligence Committee that Parnas would not be appearing as requested, and *the evening before Parnas and Fruman were arrested* wrote an e-mail to Giuliani, Jay Sekulow, Toensing, and others assuring that Parnas and Fruman would not be appearing to give a deposition or evidence against the former President. Giuliani then backed out of a planned trip to Vienna with Parnas and Fruman, and they were arrested as they boarded their flight. The following day, then-Attorney General William P. Barr made a "routine" visit to the SDNY, and, in the following months, sought the removal of SDNY U.S. Attorney Geoffrey Berman under still-undisclosed circumstances that may well have related to prosecutorial decisions made in Parnas and his co-defendants' case.

Mr. Parnas has identified ample evidence in his memoranda in support of his pre-trial motions that tends to support an assertion of discriminatory intent and effect, and warrants granting him the discovery requested therein as well as that required by the recent seizures and disclosures of even earlier searches by the Government. Indeed, it is the Government that has failed to rebut Mr. Parnas' assertions of selective prosecution, thereby warranting discovery and an evidentiary hearing to allow development of the evidentiary record in support of dismissal.

Also, the Defendants have a Constitutional right to present their defenses. Any communications of, or between, Giuliani, Toensing, and others does not need to be a part of the Government's case-in-chief to require production if it is validly related to the defense. Here, the Government should be compelled to search for and produce all outstanding evidence that supports Parnas and Fruman's selective prosecution claim, as well as all favorable or impeaching evidence as to all potential Government witnesses, including but not limited to, communications between Giuliani and ███████████—"Victim Seven" in the wire fraud charged in Count Seven, and between counsel to Parnas and Fruman on the civil FEC claims charged in Counts

Two and Three, and between Giuliani, Toensing and all other potential Government witnesses as to any other Counts.

Additionally, to the extent the Government possesses material that it has previously marked as "not responsive" to a warrant only, but that could contain Rule 16, *Brady*/*Giglio*, or selective prosecution evidence, it should be required to go back and re-search the records. And, as to materials subject to review by the Special Master, or that have been held back by a filter team, the same holds true. These reviews must be completed, and the Defendants' interests protected and included in the searches to be conducted going forward.

It is also inappropriate for the Government to assert that, if it fails to complete searches for materials that are statutorily or Constitutionally mandated prior to the time of the Defendants' trials, not using the materials will somehow remedy the violation. It does not. *Giglio* evidence, by definition, is impeaching. *Brady* evidence is favorable and exculpatory. To the extent these materials are possessed by the Government, knowingly or not, the proper review needs to be conducted, these items identified in full, and produced pursuant to the Court's standing *Brady* Order. The Government's representation that it knows and will honor its discovery obligations, while at the same time having an alternate plan not to introduce at trial evidence it may fail to review, belies the risk that the Government will not search or produce all materials to which the Defendants are entitled.

For the reasons set forth in our opening letter and herein, the Defendants respectfully request a conference at which we can fully discuss these issues with the Court. Thank you for consideration of this application.

                                                        Respectfully submitted,
                                                        _____/S/_____
                                                        Joseph A. Bondy
                                                       *Co-counsel to Lev Parnas*

cc:       All Counsel