UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>UNITED STATES OF AMERICA<br><br>            -v-<br><br>LEV PARNAS,<br>IGOR FRUMAN, and<br>ANDREY KUKUSHKIN,<br>                      Defendants.</td><td>19-CR-725 (JPO)<br><br>OPINION AND ORDER</td></tr>
</table>

J. PAUL OETKEN, District Judge:

Defendants Lev Parnas, Igor Fruman, and Andrey Kukushkin are charged with felony

offenses in a superseding indictment (S1), which was returned on September 17, 2020.  The

charged offenses involve three alleged schemes:

- *The "Straw Donor Scheme" (Parnas and Fruman):*  First, the Government alleges that Parnas and Fruman conspired in 2018 to disguise and falsely report the source of donations to political action committees and campaigns, thereby evading federal contribution limits, in order to promote their nascent energy business venture and boost Parnas's profile.

- *The "Foreign Donor Scheme" (Parnas, Fruman, and Kukushkin):*  During the same time period, Parnas and Fruman were working with Kukushkin on a separate business venture: a nascent cannabis business.  Among their activities was making political contributions to candidates in states where they intended to seek licenses to operate a cannabis business. The Government alleges that Parnas, Fruman, and Kukushkin conspired to disguise a one-million-dollar contribution from a Russian national to evade the prohibition on political contributions from foreign nationals.

- *The "Fraud Guarantee Scheme" (Parnas):*  Parnas was also working with David Correia on pitching another business venture to be called "Fraud Guarantee."  The Government alleges that Parnas and Correia defrauded several investors in Fraud Guarantee by making material misrepresentations to them, including about the business's funding and how its funds were being used.[1]

---

[1] Correia pleaded guilty to charges related to the Fraud Guarantee scheme and to making false statements to the Federal Election Commission as part of the Straw Donor Scheme.

Defendants have filed several pretrial motions.  All three Defendants move (1) for relief from the Government's alleged violation of attorney-client privilege; (2) to sever certain of the charges and Defendants into separate trials; (3) for records relating to the grand jury that returned the superseding indictment; (4) for an order requiring the Government to immediately disclose the exhibits it intends to introduce and witnesses it intends to call during its case-in-chief, along with all 3500 and *Giglio*/impeachment materials; and (5) for an order compelling the Government to itemize all materials produced in discovery and that the Defendants might characterize as *Brady* material.  Additionally, (6) Kukushkin seeks the deposition of a Russian national; (7) Parnas seeks dismissal of the case on selective prosecution grounds, and (8) Parnas has recently moved on behalf of all Defendants for a conference regarding the Government's discovery obligations in light of the April 2021 execution of search warrants on accounts and devices belonging to Rudolph Giuliani and Victoria Toensing.

The Court addresses these motions in turn.

I.       **Attorney-Client Privilege**

Defendants assert that an email, quoted in several search warrant applications, is protected by the attorney-client privilege and that, as a result, the returns from the search warrants should be suppressed and the Superseding Indictment itself should be dismissed.  This issue will be addressed in a separate opinion and order.

II.      **Severance for Trial**

All Defendants seek to sever the charges into three trials: one each for the Straw Donor Scheme (Counts One, Two, and Three), the Foreign Donor Scheme (Counts Four, Five, and Six), and the Fraud Guarantee Scheme (Count Seven).  Kukushkin also seeks a separate trial from both of his co-Defendants, and Fruman seeks a separate trial from Parnas.  The Government has

no objection to severing the Fraud Guarantee Scheme but objects to the remainder of the requests.

Rule 8 of the Federal Rules of Criminal Procedure provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).  The Second Circuit has held that this allows joinder of defendants where two or more persons' "criminal acts are 'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.'"  *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989)).

Rule 14 of the Federal Rules of Criminal Procedure provides that "[i]f the joinder of offenses or defendants in an indictment . . . for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The Supreme Court has made plain, however, that there is a "preference in the federal system for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also Feyrer*, 333 F.3d at 114 (citing "economy, convenience, and avoidance of delay" as some of the reasons underlying the strong preference for joint trials).  The presumption in favor of joint trials "is particularly strong where the defendants are alleged to have participated in a common plan or scheme."  *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).

The issue under Rule 14 is accordingly whether any prejudice to a defendant from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials."  *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986) (citation omitted).  A discretionary severance should be granted "only if there is a serious risk that a joint

trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *see also United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) (prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").

### A.      Severing the Fraud Guarantee Scheme

Because Correia has pleaded guilty and Furman and Kukushkin are not alleged to have been involved in the Fraud Guarantee Scheme, Parnas is the only defendant charged in Count Seven.  Acknowledging that there is relatively little overlap in the trial evidence that would be offered in connection with the Fraud Guarantee Scheme and the other two schemes, the Government does not object to severance of Count Seven for trial under Rule 14(a).  The Court agrees.  Defendants' motion to sever the Fraud Guarantee Scheme (Count Seven) for trial is granted pursuant to Rule 14(a).

### B.      Severing the Straw Donor and Foreign Donor Schemes

Defendants argue that the Straw Donor and Foreign Donor Schemes are not properly joined under Rule 8(b), and that even if they are properly joined, the Court should exercise its discretion under Rule 14(a) to sever the trials on those schemes.

Count One charges Parnas and Fruman with conspiring to make straw donations from March to November 2018, and Counts Two and Three charge them with making false statements in connection with one of those straw donations in October 2018.  Counts Four through Six charge Parnas, Fruman, and Kukushkin with campaign finance violations — specifically: conspiring to make straw donations and to violate the ban on foreign donors from June 2018 to April 2019 (Count Four), soliciting a contribution by a foreign national (Count Five; Parnas and Fruman), and aiding and abetting the making of a contribution by a foreign national (Count Six).

First, the Court finds that these counts are properly joined under Rule 8 because the alleged criminal acts "arise out of a common plan or scheme" and "are unified by some substantial identity of facts or participants." *Feyrer*, 333 F.3d at 114. The Government's proffered evidence indicates that both schemes involved parallel efforts to gain access to politicians to promote the Defendants' nascent businesses. Both schemes allegedly entailed political donations that hid the true donors in violation of federal bans on straw donations. Three of the four Defendants charged in the Superseding Indictment are alleged to have been involved in both schemes. And there is factual overlap in the schemes, including the use of funds from one scheme to make certain contributions in the other.

Second, the Court concludes that severance is not warranted under Rule 14 because any risk of prejudice is not "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *Lanza*, 790 F.2d at 1019. Kukushkin, emphasizing that he is charged only in the Foreign Donor Scheme, argues that the trial evidence focusing on the Straw Donor scheme would unduly prejudice him and deny him a fair trial. The Court disagrees. Neither the proffered evidence nor the nature of the alleged schemes, which are relatively straightforward, supports a conclusion that a joint trial would be substantially prejudicial. The Court will of course instruct the jury that Kukushkin is not charged in Counts One, Two, and Three, and the instructions will make clear that the jury must assess the evidence as to each defendant separately. The Court will also give limiting instructions as appropriate during the presentation of evidence at trial. The Court is confident that, with proper instructions, Kukushkin will receive a fair trial. *See, e.g., United States v. Santiago*, 174 F. Supp. 2d 16, 23 (S.D.N.Y. 2001).

Kukushkin also argues that he and his co-defendants have "mutually antagonistic" defenses, warranting separate trials.  As the Government correctly explains, however, the "defense" proffered by Kukushkin is not the type of antagonistic defense that would warrant separate trials — and does not appear to be a defense to the charges at all.  "The mere fact that co-defendants seek to place the blame on each other is not the sort of antagonism that requires a severance."  *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990).[2]

Defendants' motion to sever the Straw Donor and Foreign Donor Schemes is denied.

**C.      Severing Kukushkin** ███████████████████████

Next, Kukushkin argues that ███████████████████████████████████████



, this Court should (i) sever the trial of Kukushkin from ██ ████████████████; (ii) ████████████████████████████████████████; and (iii) ████████████████████████████████████████████████████ ████████████████████████████████████.

In *United States v. Ferguson*, the Second Circuit identified four factors to weigh when considering "whether to grant severance based on a defendant's need to call a co-defendant as a witness":

> (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege;
>
> (2) the degree to which the exculpatory testimony would be cumulative;
>
> (3) the counter arguments of judicial economy; and

---

[2] Kukushkin also argues that because Parnas waived the attorney-client privilege by providing certain materials to Congress, the Government may be able to introduce privileged materials against Parnas, prejudicing Kukushkin.  This argument is speculative, and the Government disavows any intent to seek to offer privileged materials.

(4) the likelihood that the testimony would be subject to substantial, damaging impeachment.

676 F.3d 260, 287 (2d Cir. 2011) (quoting *United States v. Finkelstein*, 526 F.2d 517, 523–24 (2d Cir. 1975)).  "While no single facet of this test is dispositive, the first [factor] is of particular importance."  *United States v. Pirro*, 76 F. Supp. 2d 478, 481 (S.D.N.Y. 1999).

Kukushkin's motion fails based on the first factor:  He has not shown ██████████ ████████████████████████████████████████████████████████████████.  *See*

*United States v. Schlegel*, No. 06 Cr. 550, 2009 WL 3837305, at *2 (E.D.N.Y. Nov. 16, 2009) ("[Defendant's] argument that [co-defendant] will testify if she is tried first is speculative.  This argument is premised on an unfounded claim that [co-defendant] would no longer have any Fifth Amendment concerns if her trial proceeded first.  Clearly, such an argument is incorrect." (internal quotations and citations omitted)).  ████████████████████████████ ███████████.  *See United States v. Avenatti*, No. 19 Cr. 373, 2020 WL 418453, at *10 (S.D.N.Y. Jan. 6, 2020).

Moreover, the third and fourth factors also weigh against severance.  Severing Kukushkin would require, at minimum, two trials on the Foreign Donor Scheme, frustrating judicial economy.  ███████████████████████████████████████████████ ██████████████████.

Kukushkin's request to sever ████████████████████ is denied.

**D.   Severing Parnas from Fruman**

Finally, Fruman argues that he should be severed from Parnas for trial on all counts. Fruman complains that Parnas has already sought out and gained a great deal of media attention, leading to various inaccurate and prejudicial news reports concerning Fruman.  Any potential prejudice along these lines can and will be addressed by a careful *voir dire* process aimed at

ensuring that selected jurors do not have any biases or preconceived views about the case. The

Court will also instruct the jurors not to do any research on the case or to read any press

regarding it. The Court is confident that it will be able to ensure that the jury will decide the case

based on the facts and the law and not any irrelevant considerations.[3]

Even where a joint trial may cause some prejudice to a defendant, "[t]he risks of

prejudice attendant in a joint trial are presumptively outweighed by the conservation of time,

money, and scarce judicial resources that a joint trial permits." *United States v. Jimenez*, 824 F.

Supp. 351, 366 (S.D.N.Y. 1993). The presumption in favor of joint trials "is particularly strong

where, as here, the defendants are alleged to have participated in a common plan or scheme."

*Salameh*, 152 F.3d at 115.

Fruman's request to sever his trial from Parnas is denied.

## III.    Grand Jury Records

Parnas moves, on behalf of all Defendants, for discovery and a hearing relating to the

composition, quorum, and presentation of evidence to the grand jury, and for dismissal of the

Superseding Indictment on the ground that it was purportedly obtained in violation of the Fifth

and Sixth Amendments.

"There is a tradition in the United States, a tradition that is 'older than our Nation itself,'

that proceedings before a grand jury shall generally remain secret." *In re Petition of Craig*, 131

F.3d 99, 101 (2d Cir. 1997) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395,

---

[3] Fruman contends that evidence of the Fraud Guarantee Scheme would be prejudicial to him.
However, the Court has decided to sever the Fraud Guarantee Scheme, and the Government
states that it does not currently plan to offer evidence of that scheme against Parnas. Fruman
also asserts that there may be antagonistic defenses between Parnas and himself. But he has
failed to explain how that is the case or how the legal standard is met here. *See Villegas*, 899
F.2d at 1346.

399 (1959)).  Such proceedings are "accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."  *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991).  A review of grand jury minutes "should not be permitted without concrete allegations of Government misconduct."  *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).  "Mere speculation" about the proceeding before the grand jury "falls far short of the showing to overcome the presumption of secrecy."  *United States v. Forde*, 740 F. Supp. 2d 406, 414 (S.D.N.Y. 2010).

Defendants seek information regarding whether a quorum of grand jurors returned the Superseding Indictment and what evidence was presented.  Such information is either already provided by the Government, publicly available, or protected by grand jury secrecy, as Defendants make no showing of Government misconduct.  Defendants also request information about the composition of the grand jury so that they can assess whether it meets the requirements of the Jury Selection and Service Act, 28 U.S.C. § 1867.  The Government apparently has provided the pertinent records regarding the composition of the grand jury, and Defendants have not renewed any fair-cross-section challenge to the grand jury.

Defendants' motion for certain grand jury records and motion to dismiss the Superseding Indictment are denied.

## IV.   Disclosure of Government Exhibit List, Witness List, and 3500 Material

In a November 27, 2020 letter motion, Defendants seek an order requiring the Government to immediately disclose the exhibits it intends to introduce, and witnesses it intends to call, during the Government's case-in-chief at trial, along with all Section 3500 and *Giglio*/impeachment material.  Defendants argue that such early disclosure is necessary given the volume of discovery produced by the Government, including terabytes of data from multiple phones, cloud storage, and email accounts.

With regard to exhibit lists, the typical practice in this circuit is to order the early disclosure of exhibits several days, or sometimes weeks, in advance of trial. *See United States v. Ferguson*, 478 F. Supp. 2d 220, 243–44 (D. Conn. 2007) (even for cases that order pretrial disclosure of documents Government intends to rely on, "a majority of those courts only ordered the government to disclose its case in chief documents a given period of time before trial" (collecting cases)); *United States v. Freeman*, No. 18 Cr. 217, 2019 WL 2590747, at *4 (S.D.N.Y. June 25, 2019) (in four-defendant case where "complex nature" and "large volume of documents produced by the government" justified early exhibit lists, rejecting defense request for 90-day disclosure as "unwarranted" and instead ordering preliminary exhibit list 30 days before trial).

With regard to witness lists, "[c]ourts in the Second Circuit typically deny motions for the early disclosure of witness lists where . . . Defendants have not made a specific showing of need." *United States v. Rivera*, No. 16 Cr. 175, 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017). Again, courts in this District typically require disclosure of witness lists several weeks before trial.

And finally, disclosure of statements of reports by Government witnesses is covered by the Jencks Act, 18 U.S.C. § 3500. Such materials are not subject to discovery or inspection until after the witness has testified at trial. Impeachment (or so-called *Giglio*) material does not need to be produced before Jencks Act materials. *See, e.g.*, *United States v. Rahman*, 1994 WL 533609, at *3 (S.D.N.Y. 1994) ("There is nothing unique about impeachment information to require that it be disclosed before other 3500 material."). In this District, the Government typically produces 3500 and *Giglio* material reasonably in advance of trial following good-faith discussions.

10

While the Rule 16 discovery in this case is voluminous, it does not appear to be dramatically different from many other complex, white-collar cases in this District.  The charges themselves are relatively straightforward.  Moreover, the Court has granted multiple extensions of the trial date — currently set for October 2021 — giving Defendants and defense counsel ample time to review discovery.

Nevertheless, in light of the volume of discovery and Defendants' concerns about trial preparation, the Court will direct the Government to disclose a witness list and exhibit list five weeks in advance of the first trial in this case.  The parties are directed to confer regarding deadlines for the disclosure of 3500 and *Giglio* material and the Court will resolve any dispute.  Defendants' motion is otherwise denied.

## V.     Itemization of Certain Discovery as *Brady* Material

Defendants seek an order compelling the Government to itemize discovery documents as *Brady* material, arguing that the information provided by the Government "took the form of summaries of witness statements prepared by the government and did not include any backup."  But "[i]n the Brady context, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence . . . ."  *United States v. Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012) (internal quotations marks and citation omitted).  Nor does the Government have any obligation at this stage to provide "backup" for witness statements — essentially, the notes from which the summaries were created.  The Government represents that it has provided multiple letters disclosing the essential facts that would enable Defendants to call witnesses and take advantage of any exculpatory testimony.  Assuming this to be true, the Court concludes that the Government has met its *Brady* obligations.  *See United States v. Stewart*, 513 F.2d 957, 960 (2d Cir. 1975).

Defendants' request for more detailed *Brady* disclosures is denied.

## VI.     Rule 15 Deposition

Kukushkin seeks an order to depose a Russian national identified in the Superseding

Indictment as "Foreign National-1."  Rule 15 permits a court to grant a party's motion for a

pretrial deposition in a criminal case only "because of exceptional circumstances and in the

interest of justice."  Fed. R. Crim. P. 15(a)(1).  The party seeking a Rule 15 deposition bears the

burden of demonstrating that "exceptional circumstances" exist.  *United States v. Vilar*, 568 F.

Supp. 2d 429, 437 (S.D.N.Y. 2008).  Specifically, the movant ""must show that (1) the

prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the

testimony is necessary to prevent a failure of justice.'"  *Id*. (quoting *United States v. Cohen*, 260

F.3d 68, 78 (2d Cir. 2001)).  With respect to witness availability, the movant must establish that

she made a "good-faith effort to produce the person to testify at trial."  *United States v. Johnpoll*,

739 F.2d 702, 709 (2d Cir. 1984).  "[S]pecific reasons" must be provided to establish

unavailability; ""[c]onclusory statements of unavailability . . . are insufficient."  *United States v.*

*Pham*, No. 12 Cr. 423, 2015 WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2014) (quoting *United States*

*v. Chusid*, No. 00 Cr. 263, 2000 WL 1449873, at *1 (S.D.N.Y. Sept. 27, 2000)).

Here, Russian law prohibits taking any testimony under oath in Russia for use in the

United States.  Moreover, such testimony would be taken without an effective oath, the

possibility of extradition, or any of the usual indicia of reliability.  Kukushkin argues that

Foreign National-1 is unavailable, submitting his counsel's declaration that, based on

conversations with Foreign National-1's counsel, it is Kukushkin's counsel's "understanding that

[he] will not come to the United States voluntarily to testify at Mr. Kukushkin's trial."  (Lefcourt

Decl. ¶ 32.)  But "a defendant's mere allegation that there is reason to believe that a foreign

witness would not attend trial in the United States is an insufficient basis upon which to require

the taking of the witness' deposition." *United States v. Merrit*, No. 90 Cr. 767, 1991 WL 79235, at *4 (S.D.N.Y. May 7, 1991).

Because Kukushkin has failed to demonstrate that a Rule 15 deposition of Foreign-National-1 is necessary or even possible, his motion is denied.[4]

## VII.   Selective Prosecution

Parnas seeks dismissal of the Superseding Indictment on the ground that he was selectively prosecuted, claiming that he was targeted on the basis of his national origin, his political affiliation, and a Government conspiracy to prevent him from exercising his constitutional rights.  Such a challenge imposes a heavy burden on a defendant.  *United States v. Armstrong*, 517 U.S. 456, 463–64 (1996).  "The presumption of regularity supports [] prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties."  *Id*. at 464 (internal quotation marks omitted) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)).

To establish a claim of selective prosecution, a defendant must present "clear evidence" that the decision to prosecute not only (1) "had a discriminatory effect" but also (2) was "motivated by a discriminatory purpose."  *Armstrong*, 517 U.S. at 465.  With respect to discriminatory effect, a defendant must establish that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against the defendant" and that the defendant has been "singled out."  *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) (quoting *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983)).  With respect to discriminatory purpose, a defendant must establish that the Government's

---

[4] The Government also disputes whether Foreign-National-1's testimony would be material, as required.  The Court need not and does not address this point.

"selection of the defendant for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Fares*, 978 F.2d at 59 (internal quotation marks omitted; alteration incorporated).

Parnas does not meet either required prong. Regarding discriminatory effect, Parnas fails to show that others who are similarly situated have not been prosecuted. This requires showing that individuals outside the protected class committed roughly the same crime in roughly the same circumstances but were not prosecuted. *See United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008). However, individuals similarly situated to Parnas were prosecuted along with Parnas, including two who share his national origin (Fruman and Kukushkin) and one (Correia) who does not. Moreover, while Parnas was subject to a Congressional demand for information at the time of his arrest, Fruman was as well, and while Parnas complied with that demand several months later, Fruman did not.

Regarding discriminatory purpose, Parnas's argument is not just speculative, but implausible. Citing Twitter posts, Parnas argues that "[m]illions of Americans already believe that [former] Attorney General Barr may have interfered in some aspect of Mr. Parnas's investigation and prosecution, based on the public record." Parnas asserts that his indictment and arrest were a means to thwart Parnas's testimony in the impeachment inquiry of former President Donald Trump. But the theorizing of Twitters users, and Parnas's own speculation, do not constitute evidence of an improperly motivated prosecution. Indeed, Parnas was, by his own admission, not cooperating with the Congressional demand as of the day of his indictment. To accept Parnas's conspiracy theory, the Government would have to have known that, one day in the future, Parnas would change his mind and decide to cooperate with the Congressional

demand.  Furthermore, the Government's conduct since Parnas's arrest undermines his theory. The Government consented to allowing Parnas to produce documents to the House impeachment committee, and it has not objected to Parnas's media interviews and television appearances.

Parnas has not made out a case for selective prosecution, nor has he established a basis for obtaining discovery on the subject.[5]  His motion to dismiss the Superseding Indictment on this basis and his request for discovery are denied.

## VIII.   Giuliani and Toensing Search Warrants

Finally, on May 20, 2021, Defendants requested a conference to address the Government's discovery obligations with respect to search warrants executed in April 2021 on accounts and devices belonging to Rudolph Giuliani and Victoria Toensing.

To be subject to disclosure under Rule 16(a)(1)(B), a statement must be "relevant," meaning that it must relate "to the crime charged" against a defendant.  *United States v. Gleason*, 616 F.2d 2, 24 (2d Cir. 1979).  Rule 16 also requires the Government to disclose any documents in the Government's possession, custody, or control if they are material to preparing the defense, if the Government intends to use them in its case-in-chief, or they were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(E).  With respect to items that the Government does not intend to use in its case-in-chief and that were not obtained from the defendant, "[i]t is [a defendant's] burden to make a prima facie showing that the documents sought . . . are material to preparing the defense."  *United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003).

---

[5] Consistent with the presumption of regularity, in order to obtain discovery in connection with a selective prosecution claim, a defendant "must show some evidence of both discriminatory effect and discriminatory intent."  *United States v. Bass*, 536 U.S. 862, 863 (2002).  Parnas has not presented a plausible claim of selective prosecution, much less offered evidence of such a claim.

The Giuliani and Toensing warrants do not authorize the Government to search for evidence related to this case, nor do any of the accounts or devices involved belong to Defendants.  The Government represents that it will not use any of the evidence seized pursuant to these warrants at trial in this case.  Thus, the only bases for discovery of these materials would be (1) if they contain statements by Defendants that are "relevant" to the charges in this case, or (2) if they are "material" to preparing a defense to the Government's case.

First, Defendants contend that the search warrant returns are likely to contain communications between Giuliani and Toensing and Parnas.  But such communications are likely to have already been produced from Parnas's and Fruman's own accounts and devices, and Defendants have not shown that they are related to the charged case, material, and non-cumulative.

Second, Parnas suggests that the warrant returns may contain evidence relevant to his selective prosecution claim.  The Court has already rejected that claim, and nothing in Parnas's letter alters the fact that Parnas has failed to make the requisite showing for such a claim.

Third, Defendants assert that the warrant returns will contain evidence relevant to impeachment of potential Government witnesses.  The Government represents that if the documents responsive to the search warrants contain impeachment material for any of the Government's trial witnesses, it will produce that material to the extent that it is non-duplicative.  The Government also represents that it has complied with, and will continue to comply with, its *Brady* obligations, including with respect to the search warrant returns.

Finally, the Government's obligation to produce discovery material is limited to what is in its possession, custody, and control.  The Court has appointed a special master to conduct a privilege review of the materials seized in April pursuant to the Giuliani and Toensing warrants,

and the Government has utilized a filter team with respect to other warrant returns.  To the extent that materials do not become available to the case team as a result of those processes, they are not subject to production under Rule 16.

In light of the foregoing, and based on the Government's representations, Defendants' request for a conference on this issue is denied.

* * *

For the foregoing reasons, Defendants' motion to sever Count Seven (the Fraud Guarantee Scheme) for trial is granted.  The Government is directed to provide Defendants with a witness list and an exhibit list at least five weeks in advance of the first trial in this case.  In all other respects, Defendants' motions are denied.

The Clerk of Court is directed to close the motions at Docket Numbers 147, 155, 157, 159, 191, and 194.

SO ORDERED.

Dated: July 14, 2021
      New York, New York

_____
J. PAUL OETKEN
United States District Judge