LAW OFFICES OF

GERALD B. LEFCOURT, P.C.

A PROFESSIONAL CORPORATION

1776 BROADWAY, SUITE 2000

NEW YORK, N.Y. 10019

GERALD B. LEFCOURT
lefcourt@lefcourtlaw.com

————

SHERYL E. REICH
reich@lefcourtlaw.com
FAITH A. FRIEDMAN
ffriedman@lefcourtlaw.com

TELEPHONE
(212) 737-0400
FACSIMILE
(212) 988-6192

October 10, 2021

<u>VIA ECF</u>

Honorable J. Paul Oetken
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *United States v. Kukushkin, et al.* S3 19 CR. 725 (JPO)

Dear Judge Oetken:

We write on behalf of Andrey Kukushkin, a defendant in the above referenced matter, to object to the government's admission at trial of three articles (GX 8-A-2; 30-A-1; and 32-A-1), and a magazine cover (GX 38-A-29), as well the Russian Roots emails (GX 136 and 137).  That these documents "form a key part of the Government's proof … of the defendants' *mens rea*" is not the standard for admissibility.  On the contrary, given the virtually non-existent evidence establishing the defendants' *mens rea* and limited relevance of these exhibits, particularly as to Mr. Kukushkin, any probative value is significantly outweighed by the prejudice they create.  Accordingly, we respectfully request that the Court find that they are inadmissible and preclude the government from introducing them at trial.

In addition, although not addressed by the government's submission of October 7, 2021 ("Gov't Letter"), Mr. Kukushkin seeks to preclude the government from admitting GX 1402, a series of charts produced to the defense yesterday which purport to "summarize" the various text exchanges between the defendants, as well as with others, in order to aid the jury.  The charts are not fair and accurate representations of the exhibits they purport to summarize, distort the facts,

and will confuse and mislead the jury.  Thus, they are inadmissible under Rule 1006 and pursuant to Rule 403.

### 1.  The Inaugural Committee Articles (GX 8-A-2 and 32-A-1)

The government seeks to admit two articles, GX 8-A-2 and GX 32-A-1, relating to investigations into donations from foreign nationals in the 2016 election.[1]  These articles were exchanged between Mr. Parnas and others – one sent to Mr. Parnas by Mr. Ahearn prior to the alleged start of the conspiracy.  Neither article was provided to Mr. Kukushkin.  For that reason, counsel understood that the government was seeking to introduce these exhibits solely against Mr. Parnas and that a limiting instruction would be given to the jury.  Still, Mr. Kukushkin objected to the admission of these exhibits due to the prejudicial nature of the allegations contained therein and concerns that a limiting instruction would be insufficient.  It turns out that the government seeks to admit these articles not only against Mr. Parnas, the only defendant in the courtroom alleged to have knowledge of the articles and their contents, but against Mr. Kukushkin as well.  The government should be precluded from doing so.

As an initial matter, although the government claims it is not seeking to admit either article for the truth of the matters asserted therein, that's exactly its purpose in introducing them.  *See* Gov't Letter at p. 2 (the articles' "value is simply in identifying that the conduct is illegal".)  Of course, the articles are not admissible for that purpose as they are replete with hearsay statements and unproven allegations.  For that reason alone, they should be deemed inadmissible.

The government's next contention is that the articles are admissible not for their truth but to show Mr. Parnas was on notice that his conduct here was criminal.  *See* Gov't Letter p. 1.  If so, this evidence is relevant only on the issue of whether Mr. Parnas knowingly and willfully joined the charged conspiracy, subject of course to a Rule 403 prejudice analysis.  As to Mr. Kukushkin, however, it is wholly irrelevant.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence".  *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (internal quotation marks omitted).  As the government concedes, Mr. Kukushkin was not a recipient of the articles.  Thus, they did not place Mr. Kukushkin on notice that the charged conduct was unlawful.  Nor do they tend to establish that Mr. Kukushkin knowingly and willfully joined the purported conspiracy.  *See e.g., Direct Sales Co. v. U.S.,* 319 U.S. 703, 711 (1943) ("evidence of knowledge must be clear, not equivocal…charges of conspiracy are not made out by piling inferences upon inferences").  Indeed, they have no probative value whatsoever with respect to Mr. Kukushkin.  Accordingly, this evidence is inadmissible against Mr. Kukushkin under Rule 401.

Finally, the government argues that Mr. Kukushkin will not be prejudiced by the use of the article to prove Mr. Parnas' state of mind for two reasons: first, "all the evidence admitted to prove [a] conspiracy, even relating to acts committed by co-defendants, is admissible against the defendant" (*see* Gov't Letter at 3); and second, "they will not 'have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence" (*id.* at p. 2).  Once again, the government's arguments miss the mark.

---

[1] If anything, that the government argues there are similarities between the alleged conduct; specifically, the involvement of a purported "Ukrainian Oligarch" wiring money from a "Cypriot" bank account to reimburse a "straw buyer", further proves the undue prejudice that will ensue if GX 32-A-1 were admitted.

The government relies on the general proposition that acts committed by co-defendants that prove a conspiracy may be admissible against all other co-defendants, citing *United States v. Salameh,* 152 F. 3d 88, 111 (2d Cir. 1998).  However, neither is applicable here.  Unlike in *Salameh,* the exhibits at issue are not evidence of the existence of the conspiracy or even the nature of the conspiracy.  Indeed, they have no bearing on whether there existed an agreement to have a foreign national make political contributions or donations.  Nor are the exhibits evidence of an act in furtherance of the charged conspiracy.  Rather, at best, they are evidence of a particular defendant's alleged knowledge of the purported unlawful nature of the charged conspiracy that may tend to prove **that defendant's** willful participation in that conspiracy, nothing more.  Therefore, while the evidence at issue may tend to prove a fact or issue with respect to Mr. Parnas, again, it proves nothing with respect to Mr. Kukushkin.

Contrary to the government's assertions, there is significant risk of prejudice to Mr. Kukushkin were this evidence admitted at trial.  More specifically, there is risk that the jury will infer that Mr. Kukushkin had the requisite knowledge and willfully participated in the charged conspiracy based solely upon evidence of Mr. Parnas' supposed knowledge, which is essentially what the government is seeking to argue.  *See* Gov't Letter at p. 3 ("That Kukushkin's co-conspirator – with whom he regularly discussed their joint plan – knew he was acting illegally bears on the existence of the conspiracy").  To be sure, while the government suggests that Mr. Parnas' knowledge is relevant to Mr. Kukushkin's because they communicated often, there is no basis whatsoever to draw that conclusion.  Indeed, in the mountains of text messages exchanged between the defendants and others, there is none which indicates or even suggests that there was a discussion about campaign finance rules, federal election laws, prohibitions on straw donors or prohibitions on contributions by foreign nationals.  Moreover, the government has interviewed every person involved in these relevant text exchanges, save for Mr. Kukushkin.  All, including at least one who was not charged, deny any discussion about campaign finance rules or prohibitions on donations by foreign nationals or straw donors.  The Government's unsupported leap, lacks a good faith basis, demonstrates exactly why this evidence is overly prejudicial to Mr. Kukushkin, and should not be admitted.

In short, these exhibits provide no relevant evidence against Mr. Kukushkin, have no bearing on his guilt, and to the extent the Court deems otherwise, any probative value is significantly outweighed by the prejudice they will engender.  Accordingly, the government should be precluded from introducing them into evidence.  In the event, the Court finds them admissible against Mr. Parnas, their highly prejudicial nature on a core issue in this case warrants a severance.  Should that application be denied, a strong limiting instruction informing the jury that this evidence is not being offered to prove and cannot be considered with respect to whether Mr. Kukushkin knowingly and willfully joined the charged conspiracy is necessary and proper.

## 2.   The FEC Complaint Article (GX 30-A-1)

The government also seeks to admit GX 30-A-1, an article which appeared in the Daily Beast on or about August 2, 2018, a link to which was allegedly forwarded by Mr. Kukushkin to Mr. Muraviev two days later.  The article, entitled "Pro Trump Megadonors Look to Cash in On Trump's Plan to Undercut Russian Energy" discusses, among other things, the FEC complaint lodged against GEP.  The government claims it is seeking to admit the article as evidence of the defendants' knowledge of the illegal nature of the charged conduct – and not for the truth of the matters asserted.  As to the former, the article falls short thus making it clear that the government

intends to admit it for its truth.  Of course, the article is hearsay and cannot be admitted for such purposes.

Further, the article is not, as the government alleges, probative of Mr. Kukushkin's knowledge of the illegality of straw donations or donations by foreign nationals.  While it does report that the FEC complaint filed against GEP alleges GEP **might** be an illegal campaign finance conduit created to mask the actual source of its political contributions, it makes no mention of nor explains "straw donors" or donations by foreign nationals.  Nor does it state that either is prohibited.  What's more the article provides that the complaint is based on the lack of public information about the company.  In other words, it contains lots of theory and conjecture that put no one on notice of anything relevant to this case.  Thus, it has no probative value and will serve only to confuse and mislead the jury.

Even worse, while arguing that the article is probative of Mr. Kukushkin's knowledge and state of mind, the government seeks to redact all portions of the article which refute and present as baseless the allegations against GEP.  More specifically, the government would like to prevent the jury from considering GEP's and Messrs. Parnas and Fruman's adamant denial of wrongdoing.  Similarly, the government seeks to redact reports by the author that his investigation revealed that "GEP appears to be doing more than last week's FEC complaint gave it credit for…".  In other words, that the complaint had no merit.  If the government truly seeks to admit the article to prove the defendants' state of mind and knowledge, the jury must be aware of the entirety of the article, not just the parts which the government believes supports guilt.

In short, the article, which is unrelated to the facts of this case, and does not explain or even reference prohibitions on "straw donations" and donations by foreign nationals has limited if any probative value.  The risk of prejudice through confusion and unfair inference, however, is great.

### 3.  The Time Magazine Cover (GX 38-A-29)

The government also seeks to introduce into evidence a Time Magazine cover bearing the title "All the Czar's Men" and subtitle "How Putin's Oligarchs Got Inside the Trump Team". This cover was exchanged on a group chat in which Messrs. Parnas and Kukushkin were both participants.  The cover, which is red, also has traditional Russian nesting dolls bearing the likenesses of former President Trump, Vladimir Putin, and others, including Paul Manafort. Neither the cover nor the article concern or reference political contributions and donations by foreign nationals.  Nor do they mention any of the defendants.  The significance of this cover to the chat participants is unknown as there is no discussion about it whatsoever, just an exchange of some emojis.  Mr. Kukushkin does not respond at all.

The government speculates that this magazine cover, devoid of any relationship to the allegations at hand, is "probative evidence on the core issue of intent".  *See* Gov't Letter p. 4.  To the government the sending of the cover (although not the article) which in two sentences "focuses on the influence of wealthy Russian businessmen in U.S. politics, and carrying the obvious connotation that such influence is disturbing" when coupled with the emoji responses of Messrs. Parnas and Fruman "provides powerful evidence that they – and Kukushkin, who was an active participant in this chat [albeit not in this exchange] – understood both the purpose of the conspiracy and that such a purpose was widely understood to be wrongful, at least by Americans".  *Id.*  This is fanciful conjecture that the government should not be permitted to make and evidences the prejudice that will ensue from its admission.

The only purpose the magazine cover serves is to create undue prejudice for the defendants.  The issue of alleged Russian interference in the 2016 Presidential elections is highly charged and divisive.  The cover being offered by the government illustrates the disdain toward Russia during the Trump administration—as evidenced by references to "All the Czar's Men".  In the wake of investigations into Russian interference in U.S. elections, references to "Putin's oligarchs" getting "inside the Trump team", may cause jurors to infer that the defendants were involved in illegal campaign contributions—even though neither the cover nor the article discuss either.  Courts in the Second Circuit have found analogous references to be more prejudicial than probative, in the context of references to Al Qaeda during an emotionally and politically charged time in the United States.  *United States v. Royer*, 549 F.3d 886, 903 (2d Cir. 2008) ("[T]he district court engaged in precisely the sort of 'conscientious assessment' that our precedents require. It carefully weighed the probative value of the 9/11–related evidence the Government wished to offer, excluded that evidence that was more potentially prejudicial than probative (such as references to Al Qaeda)."); *United States v. Elfgeeh*, 515 F.3d 100, 130 (2d Cir. 2008) ("[t]he articles plainly had the potential for unfair prejudice. Each referred to the Elfgeehs' trial and made pointed references to, *inter alia*, terrorism and/or al Qaeda").

The magazine cover should not be admitted.

### 4.  The Russian Roots Emails (GX 136 and 137)

The government also seeks to introduce into evidence GX 136 and 137, known in these proceedings as the Russian Roots emails.  The government contends that these emails show that the decision to avoid mentioning Mr. Muraviev in the formation of NewCo (which the government refers to as his corporation – without any basis) was undertaken deliberately, and with Mr. Kukushkin's involvement.  Gov't Letter at p. 5.  While the government recognizes the entirely innocent explanation for Mr. Kukushkin's statements, it still argues that they have probative value.  Specifically, the government contends that these statements were made just several weeks before NewCo was established; that Mr. Muraviev elsewhere conducted business openly in the United States, notwithstanding concerns about political paranoia; and the emails tend to suggest guilt of the other objects of the charged conspiracy, namely the use of straw donors and to unlawfully deprive the voters and the FEC of the right to know whether a "Russian Oligarch"[2] was contributing to American political candidates.  This is pure speculation.

The government's arguments demonstrate why the emails should not be admitted and further why the government should be precluded from making these arguments.  First, the government mischaracterizes the timeline.  Indeed, at the time of the Russian Roots Emails, NewCo had already been incorporated by counsel listing only Messrs. Kukushkin and Correia as the directors.  It was several weeks later that bylaws were executed by Messrs. Correia and Kukushkin.  Moreover, Mr. Muraviev did not in fact capitalize that business.  Rather, he provided a loan to Mr. Fruman and his company FD Import & Export Corp., and the proceeds of that loan were then used by Messrs. Parnas and Fruman to pay business expenses they had incurred previously, unbeknownst to Mr. Kukushkin (or Mr. Muraviev), related to their other endeavors as well as their own personal expenses.

---

[2] This is not the first time the government has attempted to slip in pejorative, prejudicial and baseless terms to describe Mr. Muraviev.  They should be prohibited from doing so at trial.

Moreover, that Mr. Muraviev's name was not listed as a director is evidence of nothing. To be sure neither Mr. Parnas nor Mr. Fruman was listed as a director either – and many of the political contributions and donations at issue in this case were made by them in their names.  Nor is there any legal requirement that Mr. Muraviev (or Messrs. Parnas and Fruman) be listed as directors or owners.  In fact, financial investors often are not listed as directors or owners of businesses.

Further, the government wants to argue that because Mr. Muraviev elsewhere did business openly in the United States the failure to disclose his involvement with respect to NewCo is telling.  More specifically, the government contends that Mr. Muraviev participated publicly in at least two legalized cannabis businesses, including in 2018.  *See* Gov't Letter p. 5. It then takes the enormous leap and claims "the only legalized cannabis business" in which Mr. Muraviev's name was concealed is NewCo.  There is no basis for the government to claim that these two are the only other legalized cannabis businesses in which Mr. Muraviev has an interest or with which he is associated, it should be precluded from making this argument.

So too is the government's claim belied by the fact that NewCo never made a single political contribution or donation.  In fact, every single political contribution or donation the government alleges was part of the charged conspiracy was made by Messrs. Parnas and Fruman individually or the name of Global Energy Producers, a company with which Mr. Muraviev never had an affiliation – financially or otherwise.  But more to the point, the government's own theory of the case – which we submit is inaccurate – alleges that essentially all the donations made as part of this so-called conspiracy were made months before NewCo was incorporated. Accordingly, it would have been of no consequence to have had Mr. Muraviev listed as a director or shareholder of NewCo.

Nor do the Russian Roots emails provide evidence of Mr. Kukushkin's motive to agree to using straw donors to make political contributions, as the government suggests.  The government's misinterpretations aside, upon a careful reading of the Russian Roots email it becomes clear that Mr. Kukushkin did not fear being transparent as to the ownership structure of NewCo.  On the contrary, he had every desire to be as transparent as necessary to avoid issues for the company in the future.

Finally, as discussed *supra* at Point 4, the prejudice is clear.  Indeed, the very same concerns about the political climate that led to the Russian Roots emails remain present today.

### 5. The "Summary" Charts (GX 1402)

Fed. R. Evid. 1006—Summaries to Prove Content—provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

*Id*.

Where a party seeks to introduce summary charts under this rule, "the court must ascertain with certainty that they are based upon and **fairly represent** competent evidence already before the jury". *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977) (citation omitted) (emphasis supplied). "Unless this requirement is met, the chart is more likely to confuse or mislead the jury than it is to assist it". *United States v. Citron,* 783 F.2d 307 (2d Cir. 1986) (finding admission of misleading summary chart error and reversing defendant's conviction); *see also* Fed. R. Evid. Rule 403. That is so because a "chart submitted by the prosecution is a very persuasive and powerful tool and must be fairly used". *Conlin, supra,* 551 F.2d at 539. As the Second Circuit explained "[a] chart which for any reason presents an unfair picture can be a potent weapon for harm and permitting the jury to consider it is error". *Id.* (citations omitted).

We recently received GX 1402. This exhibit purports to summarize the various text messages between the defendants and others which the government intends to introduce into evidence. While we have not had time to review them thoroughly, our initial review leads us to the conclusion that the charts present a distorted and unfair picture of evidence (i.e., the underlying text exchanges) and are not in fact a summary exhibit at all. As such, GX 1402 is inadmissible. *See* Rules 1006, 403; *Citron, supra; Conlin, supra.*

First, the chart seemingly pieces together excerpts from different text exchanges between different participants. In doing so, it leaves the misleading impression that they are all part of one continuous conversation when they are not. For example, page one links together three separate text exchanges. The first is an April 2018 text between Andrey Kukushkin, Alex Mikhalev, Sergei Hrapunov and Andrey Muraviev with a link about a federal bill to decriminalize marijuana. There is nothing untoward about the exchange and given that these individuals are involved in legal cannabis businesses, it is an article in which one would expect they had interest. That text exchange is linked with one that occurs nearly three weeks later between Lev Parnas and Joe Ahearn. According to the chart, which does not quote the texts, the exchange involves the sharing of a similar article regarding a bill decriminalizing cannabis along with one concerning the Special Counsel probe into donations with foreign connections. *See* Point 1, *supra.* Mr. Kukushkin is not a party to either text nor did he receive either article. The chart next includes a text exchange between Mr. Fruman and Mr. Kukushkin a few weeks later concerning a recent social visit while on vacation. By linking these wholly unrelated conversations, the government gives the misleading impression that they are directly connected. This example is particularly problematic given that the article concerning the Special Counsel's probe is inadmissible against Mr. Kukushkin, at least as to his knowledge and intent. *Id.*

Second, in addition to piecing together various text conversations, the government purports to summarize texts within those conversation.  For example, on several pages, the government provides descriptions of the texts along with excerpted quotes using ellipses to denote missing content.  In at least some instances, these excerpts essentially read out critical information which will leave the jury with an incomplete and misleading understanding of the evidence. These are just two examples.  The exhibit, in our view, is replete with others.

Finally, GX 1402 is not a summary chart at all; rather, it is a cherry-picked collection of unconnected text exchanges between different parties at different times on different subjects, linked together so that the government can argue its theory of the case through an FBI witness. That is not evidence, it is argument and reserved for summation.  The exhibit should be precluded.

### 6.  Adoption of Arguments by Mr. Parnas

Mr. Kukushkin adopts and incorporates by reference herein the arguments of Mr. Parnas to the extent they inure to Mr. Kukushkin's benefit and are not inconsistent herewith.

### 7.  Conclusion

Each of the proffered exhibits is minimally probative on any issue in this case and the obvious prejudice that will result, particularly considering the government's distorted view of the facts, outweigh any such probative value.  Accordingly, the Court should deem each inadmissible.

Respectfully submitted,


/s/ Gerald B. Lefcourt
Gerald B. Lefcourt


cc:     All counsel (via ecf)