

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 17, 2021

**BY ECF**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, New York, NY 10007

    Re:    *United States v. Lev Parnas and Andrey Kukushkin*, S3 19 Cr. 725 (JPO)

Dear Judge Oetken:

The Government respectfully submits this letter concerning the following three subjects:

**I.    DX B-1 and B-2 Are Admissible with Redaction and Instruction**

At Friday's conference, the Government stated that it would provide its position as to the admissibility of defense exhibits B-1 and B-2 under Federal Rule of Evidence 803(3), which allows evidence of future plan, motive, or intent. (*See* Tr. 719-20). Having reviewed the Rule and the exhibits, the Government agrees that the operative portions of both exhibits can be admitted to prove the defendant's intent to take the actions those exhibits describe.

The key disagreement on these exhibits appears to be that they contain nothing that proves the facts for which Kukushkin claims to offer them. For example, Kukushkin's counsel has argued that DX B-2 "is evidence" that Correia's trip to California "was about" Correia feigning a purpose "to come investigate Oasis on behalf of Fruman." (Tr. 726). In fact, DX B-2 indicates merely that Correia was traveling to California at Oasis's expense in August 2018, and says nothing about the trip's purpose. In his opening, Kukushkin gave a narrative of the fraud he claims Fruman and Parnas planned against him during the summer of 2018, including his account of what Parnas and Fruman were thinking at that time. (Tr. 82-83). The Government is not aware of any evidence that has been or will be admitted which creates a permissible basis to argue such facts to the jury, and there should not be any implication that this exhibit does so. The Government therefore consents to its admission with an instruction as to its purpose, such as "this exhibit is admitted to show that Kukushkin intended that the cost of Correia's travel to California would be funded using the attached credit card." The extent to which the facts in evidence at the close of the case establish a basis in evidence for Kukushkin's broader arguments can be litigated at a later time.

Although DX B-1 and B-2 also contain certain statements that do not appear admissible under Rule 803(3), or any other rule of evidence, most do not prejudice the Government. The first full sentence of DX B-1, concerning the first name and birth date of Kukushkin's mother, should, however, be redacted. (*See* Oct. 5, 2021 Tr. 44-45 (ruling that family background is not relevant)).

## II. The Persons Present During the Search of Parnas's House Are Not Relevant

The Government expects to call Supervisory Special Agent Ellen Thomas to testify about the execution of a judicially-authorized search warrant for defendant Lev Parnas's residence in October 2019. While the Court previously ruled that cross-examination of Special Agent Thomas should be limited to the scope of her direct and to issues of credibility, the Government seeks a further ruling that the defendants will not cross-examine Special Agent Thomas on who, outside of law enforcement, was present at the residence when the agents arrived or throughout the search, which included members of Parnas's family. (*See* Oct. 5, 2021 Tr. 38).

On direct examination, the Government intends to limit the direct examination of Special Agent Thomas primarily to the type and nature of the building she searched and relevant materials she found and seized. Fed. R. Evid. 611(b); *see Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 110 (2d Cir. 2012). The Government is unaware of any relevant reason for the jury to consider what members of Parnas's family were present during the search or any interactions agents might have had with those individuals. Such inquiries would only result in eliciting aspects of Parnas's personal life that are irrelevant to determining Parnas's guilt or innocence, and would also be unfairly prejudicial.[1] *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"). Consistent with the Court's prior ruling that aspects of Parnas's family life are irrelevant to this case, the defendants should be precluded from cross-examining Special Agent Thomas on these topics. (*See* Oct. 5, 2021 Tr. 44-45).

## III. Evidence of Parnas's Intent Should Be Admitted

In his opening statement, Parnas suggested that his involvement in politics derived from a bona fide desire to do good (Tr. 64), and claimed to have shown "courage" in seeking the legalization of cannabis (Tr. 68). In cross-examination, he has further suggested that the group's actions were motivated by, or at least consistent with, the public interest. (*See, e.g.*, Tr. 433 (suggesting that Kukushkin's "Make Our Farmers Great Again" hat advocated "a good thing")).

By doing so, the Government believes Parnas has opened the door to evidence that he knew Muraviev's interest in the joint venture was in fact hostile to the public interest. In particular, the Government has previously offered a chat exchange in which Muraviev sent the cover of a magazine article about Russian businessmen interfering in American politics, to which Parnas (and Fruman) responded with positive emojis. (*See* Dkt. 231 at 4-5 (discussing GX 38-A-29)). In excluding that exhibit, the Court found its probative value diminished because it did not discuss "campaign finance prohibits or investigations," and Parnas's emojis "are really reasonably viewed as simply political cheerleading-type responses." (Tr. 5). In light of Parnas's claims at trial, however, his "political cheerleading" of Muraviev becomes more probative: If Parnas truly held an interest in advancing the

---

[1] Following Parnas's cross of Special Agent Casola, wherein defense counsel asked a series of questions about the search of Steven Fruman's home, including characterizing the search as a "raid," the Government asked Parnas's counsel whether he would agree not to cross-examine Special Agent Thomas about the presence of members of Parnas's family during the search. (*See* Oct. 14, 2021 Tr. 444-45). Parnas's counsel responded that he believed those facts were important for the defense to elicit, but that he would consider the Government's request. As of the date of this letter, Parnas's counsel has not agreed to limit his cross-examination on this topic.

cause of Republican politics or cannabis legalization, he would not be cheerleading Muraviev's celebration of Russian interference in American politics. Because Parnas has made claims undermined by this evidence, he can no longer ask for its exclusion. *See United States v. Galanis*, 844 F. App'x 400, 402 (2d Cir. 2021) (evidence originally excluded under Rule 403 properly admitted to rebut defense claim).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: /s_____
Aline R. Flodr / Nicolas Roos / Hagan Scotten
Assistant United States Attorneys
(212) 637-1110/2423/2410

Cc:   Defense counsel (by email)